2009 Ark. 539

**Rickey Dale NEWMAN, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 02–811.**

Supreme Court of Arkansas.

Nov. 5, 2009.

See also 597 F.Supp.2d 890.

Jennifer Horan, Federal Public Defender, by: Julie Brain, Assistant Federal Public Defender, for Little Rock, appellant.

Dustin McDaniel Att'y Gen., by: Darnisa Evans Johnson, Deputy Att'y Gen., for appellee.

**JIM HANNAH, Chief Justice.**

Petitioner Rickey Dale Newman petitions this court to reinvest jurisdiction in the circuit court to allow him to seek a writ of error coram nobis. He offers two grounds for which he claims the writ is warranted: (1) that he was incompetent at the time of trial, and (2) that the prosecutor withheld material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We grant the petition.

Newman was convicted in Crawford County Circuit Court of capital murder and sentenced to death. He attempted to waive a direct appeal of his conviction and sentence, but pursuant to Rule 10 of the Arkansas Rules of Appellate Procedure—Criminal, this court conducted an automatic review and affirmed his conviction and sentence. *See Newman v. State*, 353 Ark. 258, 106 S.W.3d 438 (2003). In that direct review, we concluded that there was substantial evidence of Newman's competency to stand trial. *Id.* at 287, 106 S.W.3d at 457.

Following our mandate, the circuit court held a hearing, pursuant to Arkansas Rule of Criminal Procedure 37.5(b) to consider the appointment of counsel to represent Newman in postconviction hearings. *See State v. Newman*, 357 Ark. 39, 159 S.W.3d 309 (2004) (per curiam). During the hearing, the circuit court advised Newman of his rights with respect to Rule 37.5 relief, specifically informing Newman that any waiver of those rights and Newman's willful failure to pursue relief under Rule 37.5 would result in the death sentence being carried out against him. *Id.* at 39–40, 159 S.W.3d at 310. In sworn testimony to the circuit court, Newman stated that he wished to waive his rights to an attorney and to waive his right to postconviction relief. Thereafter, the circuit court entered an order concluding, in relevant part, that Newman was competent to waive his right to postconviction relief. *Id.* at 40, 159 S.W.3d at 310.

The State subsequently filed a petition requesting that this court lodge the record of the waiver proceedings and review the circuit court's order. We denied the State's petition, due to Newman's statement during the waiver hearing that he was under the influence of his medication, namely Thorazine. *See State v. Newman*, 355 Ark. 265, 132 S.W.3d 759 (2003) (per curiam). Accordingly, we remanded the matter for the sole purpose of having the circuit court order the Arkansas State Hospital to conduct an evaluation of Newman to determine whether he was competent to proceed with the Rule 37.5 hearing and to waive his rights under that rule. *Id.*

Pursuant to our remand, Dr. Charles Mallory,[1] a psychologist with the State Hospital, conducted an examination of

---

1. Dr. Mallory also examined Newman prior to trial and testified that Newman was competent to stand trial. *See infra.*

Newman and concluded that Newman did not suffer from any mental disease or defect and that he had the capacity to make a knowing, intelligent, and voluntary waiver of his right to have an attorney advise him on his postconviction rights. *Newman*, 357 Ark. at 41, 159 S.W.3d at 311. Following receipt of Dr. Mallory's report and after hearing Newman's own testimony regarding the waiver, as well as Newman's testimony that he agreed with Dr. Mallory's determination of competency, the circuit court found that Newman was competent and had knowingly and voluntarily waived his postconviction rights under Rule 37. *Id.* at 42, 159 S.W.3d at 312. We affirmed the circuit court. *Id.,* 159 S.W.3d at 312.

Later, through appointed counsel, Newman filed a petition for federal habeas corpus relief in the United States District Court for the Western District of Arkansas. At hearings before the federal district court, new evidence was presented that Dr. Mallory, the sole witness at Newman's state competency hearings, incorrectly scored the test he administered to Newman, resulting in a higher IQ score; used improper tests to determine Newman's competency; and improperly administered Newman's tests. *See Newman v. Norris,* 597 F.Supp.2d 890, 895 (W.D.Ark. 2009). In addition, Newman presented evidence not considered by the state courts regarding the reasonableness of his legal decisions at the time of his trial and appeals, as well as evidence not considered by the state courts regarding his ⌊4claim of actual innocence. *Id.* Accordingly, the federal district court concluded that Newman had failed to exhaust all of his claims in the state courts and directed Newman to return to state court to pursue further postconviction relief. *Id.* at 896.[2]

■ Newman now petitions this court to reinvest jurisdiction in the circuit court

---

**2.** The federal district court dismissed Newman's unexhausted claims to allow the state courts the first opportunity to rule on claims effected by the newly discovered evidence, held all other exhausted claims in abeyance, and predicated the stay upon the twin conditions that Newman promptly seek relief from the State and then promptly return to federal district court, if necessary, to prosecute his petition. *Newman v. Norris,* 597 F.Supp.2d 890, 896–97 (W.D.Ark.2009). The court explained that Newman had shown good cause for failing to exhaust his federal habeas claims, stating:

> At this point, the statute of limitations has run. If the Petition is now dismissed, Petitioner would be unable to re-file it in federal court after exhausting the unexhausted claims. *See Rhines v. Weber,* 544 U.S. 269, 271, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). To alleviate the hardship that comity and the statute of limitations places on petitioners with mixed petitions, the United States Supreme Court has recognized the availability of staying the exhausted claims and holding the unexhausted claims in abeyance. *Id.* at 276–77, 125 S.Ct. 1528. However, district courts are not without limitation in their ability to use the stay and abeyance procedure. District courts can only employ the procedure if there is good cause for a petitioner's failure to exhaust his claims, the unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. *Id.* at 277–78, 125 S.Ct. 1528. Additionally, the district court "should place reasonable time limits on a petitioner's trip to state court and back." *Id.* at 278, 125 S.Ct. 1528. Petitioner has shown that he was mentally impaired at the time he waived all waivable appeals to the state courts and waived his right to appellate counsel. We find that Petitioner's mental impairment and questionable competence at the time he should have filed his state appeals is an exceptional circumstance that constitutes good cause for his failure to exhaust his claims. His unexhausted claims involve evidence never before considered by state courts and are potentially meritorious. Furthermore, we find that there is no indication that Petitioner has engaged in intentionally dilatory litigation tactics.

*Newman,* 597 F.Supp.2d at 896.

to allow him to seek a writ of error coram nobis. A writ of error coram nobis is an extraordinarily rare remedy, more known for its denial than its approval. *Cloird v. State*, 349 Ark. 33, 76 S.W.3d 813 (2002). Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id.* The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the circuit court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment. *Sanders v. State*, 374 Ark. 70, 285 S.W.3d 630 (2008).

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* We have held that a writ of error coram nobis was available to address certain errors that are found in one of four categories: insanity at the time of trial, a coerced guilty plea, material evidence withheld by the prosecutor, or a third-party confession to the crime during the time between conviction and appeal. *Id.*

Where the writ is sought after judgment has been affirmed on appeal, the circuit court may entertain the petition only after this court grants permission. *Echols v. State*, 354 Ark. 414, 125 S.W.3d 153 (2003). This court will grant permission only when it appears the proposed attack on the judgment is meritorious. *Id.* In making such a determination, we look to the reasonableness of the allegations of the petition and to the existence of the probability of the truth thereof. *Id.*

Although there is no specific time limit for seeking a writ of error coram nobis, due diligence is required in making an application for relief. *Id.* In the absence of a valid excuse for delay, the petition will be denied. *Id.* Due diligence requires that (1) the defendant be unaware of the fact at the time of the trial; (2) the defendant could not have, in the exercise of due diligence, presented the fact at trial; and (3) the defendant, after discovering the fact, did not delay bringing the petition.[3] *See id.*

## I. *Incompetency at Trial*

Newman's first ground for relief is his claim that he was incompetent to stand trial. At a pretrial hearing, Newman presented the testimony of Dr. Mallory, who examined Newman prior to trial. Dr. Mallory testified that Newman was competent to stand trial and rational enough to make decisions regarding his case. *Newman*, 353 Ark. at 269, 106 S.W.3d at 445. The circuit court found that Newman was competent to stand trial. *Id.*, 106 S.W.3d at 445. We affirmed the circuit court's finding, stating that "Dr. Mallory's opinion is substantial evidence of Newman's competency to stand trial." *Id.* at 287, 106 S.W.3d at 457.

Newman asserts in his petition that he will prove at a hearing in the circuit court that, contrary to Dr. Mallory's opinion, he was incompetent to stand trial because he suffers from a debilitating combination of psychiatric illnesses and cognitive impairments that deprived him of the capacity to fully understand the proceedings against him or to assist effectively and rationally

---

3. We note that, previously, we have listed the three requirements of due diligence in the disjunctive, separating the requirements with "or." *See, e.g., Larimore v. State*, 327 Ark. 271, 278, 938 S.W.2d 818, 821 (1997). The use of "or" was an inadvertent error. The requirements listed are a sequence of events, each of which a defendant must show to prove due diligence. Thus, the requirements are in the conjunctive, to be separated with "and."

in his own defense. He avers that Pablo Stewart, M.D., a psychiatrist, will testify that Newman suffers from posttraumatic stress disorder, chronic, with resultant major depressive disorder, recurrent, and polysubstance dependence. Newman states that Ricardo Weinstein, Ph.D., a neuropsychologist, will testify that his neuropsychological evaluation of Newman revealed that Newman has severely impaired cognitive functioning, including significantly subaverage intellectual functioning and severe deficits in executive functioning. Additionally, Newman states that family members will attest that he endured a horrific childhood, during which he was subjected to extreme physical and psychological abuse, neglect, abandonment, and loss, and that Drs. Stewart and Weinstein will explain how these experiences devastated his development and mental health. Newman states that Drs. Stewart and Weinstein will both testify that, in their professional opinion, Newman was incompetent to stand trial in 2002. Attached to Newman's petition are numerous exhibits, including medical reports supporting the conclusions of Drs. Stewart and Weinstein, as well as declarations from family members supporting Newman's claims about his childhood.

Newman acknowledges that he has sought the death penalty in this case and that he attempted to waive his direct appeal. He states that he was not motivated to secure a death sentence because of remorse or desire to take responsibility for a wrong he committed; to the contrary, he claims that he is entirely innocent of the murder. He claims that he wished to be executed because his impaired thinking made him believe that death is more bearable than continuing to live.

In further support of his petition, Newman states that new evidence has come to light that shows that Dr. Mallory's conclusions regarding his competency to stand trial are unreliable. In November 2007, Dr. Mallory testified at an evidentiary hearing held in connection with Newman's federal habeas corpus proceeding. Newman points to Dr. Mallory's testimony in federal court and presumes that Dr. Mallory would testify similarly at a circuit court hearing regarding a petition for writ of error coram nobis.

Dr. Mallory acknowledged that the IQ test Dr. Weinstein administered, the Wechsler Adult Intelligence Scale–III ("WAIS–III"), is a very reliable test and the most widely used test in the world. However, Dr. Mallory instead administered the Wechsler Abbreviated Scale of Intelligence ("WASI") and the "Kent Test" to assess Newman's level of cognitive functioning. Newman contends that neither of these tests are appropriate for determining a person's IQ. Dr. Mallory acknowledged that the manual of the WASI specifically states that the instrument should not be used alone to make diagnoses and should not be used for legal or judicial purposes. In addition, Dr. Mallory acknowledged that the Kent Test was not a commercially available instrument, but a "homemade test that a psychiatrist once passed [him]." Dr. Mallory explained that the Kent Test consisted of ten questions, such as, "What is sand used for?" and "What are the names of some fish?" A person earns points for knowing answers to the questions. Dr. Mallory agreed that the Kent Test had not been shown to have any reliability or validity or to have any ability to accurately predict intellectual functioning. Nevertheless, Dr. Mallory stated that, on the basis of Newman's score on the Kent Test, Newman had an average intellectual ability and there was no need for further intelligence testing.

Dr. Mallory admitted that he made a significant scoring error when he adminis-

tered the WASI to Newman. Specifically, Dr. Mallory scored Newman's results using the norms for the wrong age group, erroneously inflating Newman's scores on all subparts of the test. Correctly scored, Newman's verbal IQ score was 80, rather than 84, as Dr. Mallory had reported; Newman's performance IQ score was 72, rather than 77; and his full scale IQ score was 75, not 78. Dr. Mallory indicated that a full-scale IQ score of 75 would necessitate a further investigation of Newman's cognitive function. Dr. Mallory admitted that he "certainly made a big error."

According to his testimony at the habeas hearing, Dr. Mallory also made scoring errors when administering the Folstein Mini Mental Status Exam. Dr. Mallory reported that Newman had scored 29 points on the test, a result that indicated no potential cognitive impairment. However, Dr. Mallory admitted that he had added the points incorrectly and that he had actually awarded Newman only 24 points. Dr. Mallory further stated that the manual for the test recommends a cutoff score of 26 as indicating potential cognitive impairment.

Newman avers that Dr. Mallory also erroneously inflated Newman's scores on the Folstein exam. Dr. Mallory admitted that he awarded Newman a point for knowing the correct date when Newman had given the wrong date. Dr. Mallory also admitted that he gave Newman a point for naming the county in which the evaluation was taking place, even though Newman's first two guesses were wrong. Dr. Mallory testified that he gave Newman two points for correct completion of serial sevens, a task that requires the test subject to count backward from 100 in sevens (100, 93, 86, etc.), despite Newman's inability to complete the task. Instead, Dr. Mallory substituted serial threes, a task that only required the subject to count backward from 20 by threes.

Dr. Mallory admitted that he improperly awarded Newman a point for sentence composition, even though the sentence was "difficult to comprehend." In addition, Dr. Mallory stated that he awarded Newman a point for drawing two pentagons, even though one of the shapes was drawn with only four sides, an example the test manual stated should be scored at zero. With all of the erroneously awarded points deducted, Newman's score would be an 18, rather than a 29, which Dr. Mallory had reported at trial.

Newman contends that the evidence of his incompetence to stand trial is overwhelming and that this court should find that Newman has amply made the showing of probable merit needed for leave to file a coram nobis petition with respect to this claim and remand to the circuit court for a hearing.

■ We agree that Newman appears to have a meritorious claim regarding his incompetence at the time of trial. Dr. Mallory provided the only evidence of Newman's competency to stand trial. Subsequently, in federal district court, Dr. Mallory admitted that he made significant scoring errors when administering tests to Newman. These scoring errors undermine the validity and reliability of Dr. Mallory's testimony at trial. Dr. Mallory's declaration of Newman's competence is suspect, as it was based upon flawed data. This, together with Newman's exhibits, affidavits, and proposed testimony in support of his petition, warrant granting permission for leave of the court in this case.

We reject the State's argument that Newman's petition must be denied because he has not been diligent in pursuing the claim. The State asserts that Newman's delay in bringing the petition is evidenced

by his choice of forum, in that Newman did not bring his application to this court until directed to do so by the federal district court so that he could satisfy the exhaustion doctrine and advance his claims there.

Newman asserts that, he could not have raised his claim of incompetence at trial because, at the time of trial, trial counsel was ignorant of Newman's mental impairments and resulting incompetency. Newman points out that trial counsel secured an evaluation of Newman by the State Hospital, but as noted, the resulting report declared Newman free from mental disease and fully competent to proceed. Trial counsel did not obtain the data underlying the evaluation, and thus was unaware that the tests contained scoring errors. Further, trial counsel did not obtain an evaluation of Newman by independent mental health experts and did not investigate Newman's history and background or talk to family members.

Newman also states that, in no way can he be accused of lacking diligence following completion of his trial. With the exception of a lawyer appointed as amicus curiae of this court during his mandatory direct appeal, whom Newman did not meet, Newman was without counsel between his trial in June 2002, and September 2004, when present counsel was appointed to represent him. Newman asserts that he continued to be mentally incompetent during this time. Newman's present counsel attempted to initiate Rule 37 proceedings on Newman's behalf, but Newman dismissed those proceedings. Newman's present counsel asserts, again, that Newman was incompetent at that time. Newman's present counsel then proceeded to federal court, filing a federal habeas petition on December 20, 2005. Finally, Newman points out that the State has steadfastly maintained that no state-court remedies whatsoever remained available to Newman and that it would be grossly unfair to allow the State to take the position for over four years that Newman may not seek relief in its courts and then, when Newman is required to seek such relief, to permit it to argue that his application should be denied on the ground that he should have filed in state court earlier.

In *Echols,* we denied an application for permission to file a petition for writ of error coram nobis on the ground of incompetency to stand trial due to petitioner's lack of diligence. 354 Ark. at 419, 125 S.W.3d at 157. Based upon the record before us in *Echols,* we concluded that petitioner's defense team was aware of petitioner's history of mental treatments at the time of trial and noted that the same documents that were offered in support of the application were in counsel's possession, and placed in the record, at the time of trial. *Id.,* 125 S.W.3d at 157. We stated that counsel could have raised the issue at trial, or at a minimum, could have pursued the issue of petitioner's incompetency in Rule 37 proceedings. *Id.* at 419–20, 125 S.W.3d at 157.

Here, in contrast, it appears that Newman was diligent in pursuing a claim of incompetence. Upon learning of the improperly scored tests, which supported the finding of competence to stand trial, present counsel began pursuing relief on behalf of Newman. Efforts to pursue the claim in a Rule 37 petition were thwarted by Newman; present counsel maintains that Newman's actions are a result of his continuing incompetence. The State's contention that Newman's lack of diligence is demonstrated by his choice of forum— pursuing relief in the federal court, as opposed to pursuing relief in this court—is not persuasive, especially given the fact that the State itself asserted in federal court that Newman had exhausted all of

his remedies in state court. Based on the foregoing, we hold that Newman exercised diligence in pursuing his claim of incompetence. In sum, after considering the reasonableness of the allegations and their probable truth, and after concluding that Newman was diligent in pursuing his claim, we grant Newman's petition to reinvest jurisdiction in the circuit court to seek a writ of error coram nobis on his claim of his incompetence to stand trial.

## II. Brady *Violations*

■■■■ For his second ground for coram nobis relief, Newman claims that the prosecutor withheld exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which requires the State to disclose all favorable evidence material to the guilt or punishment of an individual. For a true *Brady* violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Cook v. State,* 361 Ark. 91, 105, 204 S.W.3d 532, 540 (2005) (quoting *Strickler,* 527 U.S. at 280, 119 S.Ct. 1936). The "reasonable probability" standard is applied "collectively, not item by item," such

that the "cumulative effect" of the suppressed evidence, and not necessarily each piece separately, must be material. *Kyles v. Whitley,* 514 U.S. 419, 436–37, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). The rule set out in *Brady* also "encompasses evidence 'known only to police investigators and not to the prosecutor.'" *Strickler,* 527 U.S. at 280–81, 119 S.Ct. 1936 (quoting *Kyles,* 514 U.S. at 438, 115 S.Ct. 1555). "In order to comply with *Brady,* therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.'" *Strickler,* 527 U.S. at 281, 119 S.Ct. 1936 (quoting *Kyles,* 514 U.S. at 437, 115 S.Ct. 1555).

In support of his claim of *Brady* violations, Newman points to several matters that he asserts were withheld by the prosecutor. First, he claims that the prosecutor failed to disclose the fact that the victim was not killed in the tent in which her body was found. Newman states that this evidence is highly material because it proves that his so-called confession, the only significant evidence against him, was false and conclusively refuted by the physical evidence.[4] He also contends that this evidence belies the government's theory of his guilt, namely that he took the victim to a liquor store, bought liquor to tempt her to go with him, took her to the camp on the hill, and killed her when she refused his sexual advances. Attached to Newman's petition is the declaration of Patricia L. Zajac, Professor of Criminal Justice and

---

4. Newman testified at trial and confessed to killing the victim, Marie Cholette. *Newman,* 353 Ark. at 273, 106 S.W.3d at 448. Newman stated:

> What happened, uh, I came into town, I met up with this lady, she was wearing a black rag and a tin concha, she was a fake. She claimed that she hurt one of our brothers during a little alteration [sic] with her and her husband, uh, I went across the

> bridge and I bought her alcohol, I drugged her up, I got her drunk and I killed her. Cut her from head to toe. I killed her more than once, I killed her until I got tired of killing her, until the passion of blood went away. Then I left it lay like a dog and walked away. Washed my hands of the whole affair.

> *Id.* at 273, 106 S.W.3d at 448.

the Chair of the Department of the Criminal Justice Administration at California State University, East Bay. Zajac, experienced in collecting and processing evidence and in analyzing and comparing physical evidence, stated that it was her opinion, to a reasonable degree of scientific certainty, that the victim was not killed in the tent in which her body was found by police. She based her opinion on the fact that, relatively speaking, little blood was found around the body in the tent, and the facts of the case suggest that a large amount of blood would have been found where the victim was killed. Zajac also took issue with the hair evidence in the case. She stated that the hair evidence recovered from the crime scene and from Newman's belongings failed to inculpate Newman, and in some instances, affirmatively exculpate him.

Second, Newman claims that the prosecutor suppressed evidence that the victim had been in a fight with an individual named Copperhead shortly before she was killed, and that Copperhead thereafter held a grudge against the victim because he believed that she had stolen his wallet and stabbed him with a knife. In support of this claim, Newman offers the videotaped statement of Orieste Baker, who stated that he witnessed the fight between the victim and Copperhead. Newman states Baker also said that the victim told him about the fight and said that she was very frightened of Copperhead. Newman also offers statements from others who knew of the fight between Copperhead and the victim, as well as Copperhead's anger toward the victim.

Third, Newman claims that the prosecutor suppressed evidence that, shortly before the victim died, she was involved with two men of whom she was afraid and trying to escape from, at least one of whom had been repeatedly forcing her to have sex with him. He claims that this evidence is highly material because it points to the guilt of persons other than Newman. In support of this claim, Newman points to the statement of Orieste Baker that Baker had helped the victim escape from two men. Baker stated that the victim drove up in a car with two men, honked the horn, and asked him to wait for her. According to Baker, the victim told him she was scared of the two men and needed to get away from them. Baker stated that he noticed a hickey on the victim's neck and asked her about it; he said that the victim told him that one of the men had been after her and forcing her to have sex with him.

Fourth, Newman claims that the prosecutor failed to disclose evidence that a boot print left in blood at the scene where the victim's body was found did not match Newman's footwear and could not have been left by him. Newman asserts that this exculpatory evidence was material because the person who left the print obviously did so after the victim was killed, and thus was likely her killer.

Fifth, Newman states that he will show that the prosecutor failed to disclose the videotaped and other statements given to police by individuals including Orieste Baker, Benny Billy, Robert Hamilton, Ronald Kye, and John Evans. Newman claims that each statement contains an abundance of material, exculpatory evidence.

Sixth, Newman claims that the prosecutor failed to disclose evidence that an FBI profiler had analyzed the case and generated a profile inconsistent with Newman. He asserts that the profile excluded him as a potential suspect and contained multiple elements that were inconsistent with or inapplicable to him.

Seventh, Newman claims that the prosecutor suppressed evidence that law enforcement officers had tried and failed to inculpate him in similar, probably linked,

murders. He states that this evidence was exculpatory in several ways, including but not limited to the fact that there was reason to suspect that the same person committed all of the similar murders, and if he was cleared of the crimes in other jurisdictions, he was not guilty of the murder in this case, either.

Finally, Newman claims that the prosecutor failed to disclose exculpatory evidence with respect to Newman's 1998 conviction for second-degree battery, a prior felony conviction that was introduced during the penalty phase of his trial. He contends that law enforcement and the prosecution were in possession of evidence that he was not guilty of that crime. Newman states that the evidence included, but was not limited to, evidence that he was only one of the individuals at the scene of the crime, that he was not the person primarily responsible for the attack, and that he refused to tell police the truth and took a guilty plea because he was trying to protect the culpable individuals and refusing to snitch on them.

In sum, Newman claims that the State suppressed a trove of highly favorable evidence and that, had this evidence been disclosed, there is a reasonable probability that the jury would not have convicted him. The State responds that Newman has failed to demonstrate that he was prejudiced by any of the allegedly withheld evidence. Specifically, the State asserts that Newman cannot claim prejudice, in light of his judicial confessions at the guilt and penalty phases of his trial.

Based upon the record before us, we conclude that it appears that there were possible *Brady* violations in this case. We are mindful of Newman's confessions; however, Newman has presented evidence that he might have been incompetent when he made the confessions. As such, we are in no position to determine whether, had the suppressed evidence been disclosed to the defense and presented at trial, there is a reasonable probability that the judgment of conviction would not have been rendered. This determination must first be made by the circuit court. We add that, for the reasons previously stated, Newman exercised diligence in his claim of *Brady* violations. Based upon the foregoing, we grant Newman's petition to reinvest jurisdiction in the circuit court to seek a writ of error coram nobis on his claim of *Brady* violations.

Newman may file a petition for writ of error coram nobis limited to the claims of whether he was competent to stand trial and whether there were *Brady* violations in his case. With respect to the claim of *Brady* violations, the circuit court must determine whether the evidence at issue was available to the State before trial and, if so, whether the evidence was indeed favorable to the defense. If the circuit court determines that favorable evidence was withheld from the defense, the court must then determine whether prejudice ensued to the defense as a result of the State's failure to disclose the evidence. Finally, the circuit court must determine whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. If Newman prevails on either claim and a writ of error coram nobis is issued, he is entitled to a new trial. *See, e.g., Cloird*, 349 Ark. at 39, 76 S.W.3d at 817.

Newman's petition to reinvest jurisdiction in the circuit court to consider a petition for writ of error coram nobis is hereby granted. The Arkansas Federal Public Defender will continue to represent Newman.

Petition granted.