SLIP OPINION

# SUPREME COURT OF ARKANSAS.
### No. CR-87-209

| | | |
|---|---|---|
| SANDERS M. CARTER | | **Opinion Delivered** November 10, 2016 |
| | APPELLANT | |
| V. | | PRO SE SECOND PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS |
| STATE OF ARKANSAS | | [PULASKI COUNTY CIRCUIT COURT, NO. 60CR-87-63] |
| | APPELLEE | |
| | | <u>PETITION DENIED.</u> |

**PER CURIAM**

In 1987, petitioner Sanders M. Carter was convicted by a jury of rape, aggravated robbery, and burglary. He was sentenced as a habitual offender to consecutive terms of imprisonment of life for rape and an aggregate sentence of forty years' imprisonment for the other offenses. We affirmed. *Carter v. State*, 295 Ark. 218, 748 S.W.2d 127 (1988).

Subsequently, Carter filed in this court a pro se petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1 (1987). The petition was denied. *Carter v. State*, CR-87-209 (Ark. Oct. 16, 1989) (unpublished per curiam). In 1990, appellant filed in the trial court a pro se petition for writ of habeas corpus that was denied. On appeal from the order, this court concluded that the allegations raised in the petition were cognizable under Rule 37.1 and did not state a ground to issue the writ. The appeal was dismissed. *Carter v. State*, CR-90-187 (Ark. Nov. 5, 1990) (unpublished per curiam). Carter then filed in the trial court a petition for scientific testing of evidence pursuant to

SLIP OPINION

Act 1780 of 2001 Acts of Arkansas, codified at Arkansas Code Annotated sections 16–112–201 to 207 (Supp. 2003), based on a claim that the chain of custody of certain evidence was not broken and could be used in his defense. Ark. Code Ann. § 16–112–202(b). After a hearing at which Carter was represented by counsel, the trial court denied the petition, and we affirmed. *Carter v. State*, CR–03–148 (Ark. Feb. 19, 2004) (unpublished per curiam). Next, in 2005, Carter filed a petition for writ of habeas corpus in the circuit court in the county in which he was incarcerated. The petition was denied, and we affirmed the order. *Carter v. Norris*, 367 Ark. 360, 240 S.W.3d 124 (2006) (per curiam).

In 2008, Carter filed another pro se petition for writ of habeas corpus in the trial court pursuant to Act 1780. The trial court held that Carter had already sought scientific testing of evidence collected at the crime scene and that he had not established that he was entitled pursuant to Arkansas Code Annotated section 16–112–205(d) to file a subsequent petition for scientific testing. The petition was denied, and we affirmed the order. *Carter v. State*, 2010 Ark. 29 (per curiam).

In 2011, Carter filed in this court a pro se petition in the case to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis. The petition for leave to proceed in the trial court was necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram-nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id*. The function of the writ is to secure relief from a judgment rendered

SLIP OPINION

while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38.

In the 2011 petition, Carter asserted a violation of the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* violation is established when material evidence favorable to the defense is wrongfully withheld by the State. *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999) (per curiam). In *Strickler v. Greene*, 527 U.S. 263 (1999), the Supreme Court revisited *Brady* and declared that when the petitioner contends that material evidence was not disclosed to the defense, the petitioner must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

In *Strickler*, the Court also set out the three elements of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or

because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler*, 527 U.S. 263; *see Howard*, 2012 Ark. 177, 403 S.W.3d 38. Impeachment evidence that is material, as well as exculpatory evidence, falls within the *Brady* rule. *Bagley*, 473 U.S. 667.

The *Brady* violation alleged by Carter in the 2011 petition was that the State withheld evidence from the defense, but, as we noted in the opinion denying the petition, the documents and testimony that he pointed to as having been withheld did not exist at the time of trial. The petition was denied. *Carter v. State*, 2011 Ark. 481 (per curiam).

Now before us is Carter's second petition to reinvest jurisdiction in the trial court in the case to consider a petition for writ of error coram nobis. Carter asserts in the second petition that he learned during the 2015 Act 1780 proceeding in the trial court that there were thirty-four "negroid" hairs recovered from the rape victim's pink bedsheet. He contends that at his trial in 1987 only one pubic hair and eight hair fragments had been forensically tested and that the existence of the thirty-four hairs had been concealed from the defense. He argues that he would not have been found guilty had the thirty-four hairs been tested at the time of trial because the hair examiner would have had a larger pool of evidence to test.

We do not find that Carter has proven a *Brady* violation because Carter has not demonstrated with facts that there is a reasonable probability that the outcome of the trial would have been different had the hair examiner had a larger pool of hair samples to examine. At most, Carter has suggested that more hair would have given the examiner more to compare; he does not contend that more hair would necessarily have ruled him out

4

as the perpetrator. Moreover, even if it could be said that not all of the hairs taken into evidence were forensically examined at the time of trial, Carter has not shown that there is a reasonable probability based on the evidence adduced at trial that the outcome of the trial would have been different if the hair examiner who testified at trial had a greater number of hairs to test.

There was evidence adduced at Carter's trial that in November 1986 a man entered the victim's home through a kitchen window off a deck. He threatened to kill the victim with a knife, searched her purse for money, raped her, beat her repeatedly, and threatened that, if she called the police, he would come back at a later time and cut her throat. The assault lasted forty to forty-five minutes. In spite of his threat, the victim called the police and gave a description of the perpetrator. One night in January 1987, the victim heard someone on the deck and saw a man pass by the window. She called the police, and Carter was apprehended on the deck and taken into custody. Later that day, and again at trial, the victim identified Carter as her assailant. *See Carter*, 295 Ark. at 220, 748 S.W.2d at 127.

When considering a *Brady* violation, we look at the significance of the evidence that was alleged to have been concealed from the defense weighed against the totality of the evidence to determine if the evidence at issue would have been such as to have prevented rendition of the judgment had the evidence been available at the time of trial. *Smith v. State*, 2015 Ark. 188, 461 S.W.3d 345 (per curiam); *Goff v. State*, 2012 Ark. 68, 398 S.W.3d 896; *Sanders v. State*, 2011 Ark. 199 (per curiam). We further consider the cumulative effect of the allegedly suppressed evidence to determine whether the evidence that was alleged to have been suppressed was material to the guilt or punishment of the defendant. *Goff*, 2012

SLIP OPINION

Ark. 68, 398 S.W.3d 896. Here, the victim's testimony was sufficient to establish that Carter committed the offenses. His claim of a *Brady* violation falls short of establishing that there was evidence withheld that meets the threshold requirements of a *Brady* violation that was both material and prejudicial such as to have prevented rendition of the judgment had it been known at the time of trial. It is petitioner's burden to demonstrate that there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed at trial. *Wilson v. State*, 2014 Ark. 273 (per curiam). Petitioner has failed to meet this burden.

Petition denied.