Cite as 2020 Ark. 14

# SUPREME COURT OF ARKANSAS

No. CR-02-447

| | |
|---|---|
| ROY TOLSTON <br>          PETITIONER <br><br> V. <br><br> STATE OF ARKANSAS <br>          RESPONDENT | **Opinion Delivered** January 16, 2020 <br><br><br> PRO SE PETITIONTO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS AND WRIT OF AUDITA QUERELA [PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION, NO. 60CR-01-1063] <br><br> PETITION DENIED. |

**KAREN R. BAKER, Associate Justice**

Petitioner Roy Tolston brings this petition to reinvest jurisdiction in the trial court

to file a petition for writ of error coram nobis and audita querela[1] in his criminal case. In

the petition, Tolston contends that the trial court erroneously failed to apply the criminal

code section that was in effect at the time the crime was committed and that the prosecutor

violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding a medical report pertaining

to an examination of the victim. Because we find that Tolston's claims do not establish a

ground for the writ, the petition is denied.

---

[1]Audita querela actions as a procedure for obtaining relief from a judgment have been abolished. Petitions for the abolished writs of error like coram vobis and audita querela are treated as petitions for writ of coram nobis relief, with the same grounds for relief and procedural rules applicable. *Whitney v. State*, 2018 Ark. 138.

## I. *Nature of the Writ*

The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Green v. State*, 2016 Ark. 386, 502 S.W.3d 524. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

## II. *Grounds for the Writ*

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999). A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38. The burden is on the petitioner in the application for coram nobis relief to make a full disclosure

of specific facts relied on and not to merely state conclusions as to the nature of such facts. *McCullough v. State*, 2017 Ark. 292, 528 S.W.3d 833.

## III. *Background*

Tolston was convicted of rape in a bench trial and sentenced as a habitual offender to 480 months' imprisonment. The Arkansas Court of Appeals affirmed. *Tolston v. State*, CACR 02-447 (Ark. App. Feb. 5, 2003) (unpublished). In its opinion, the court of appeals set out the trial testimony of the victim, J.S., who testified that she lived in an apartment with another female and that on the evening of January 14, 2001, her roommate's boyfriend and Tolston visited the apartment. *Id.* J.S. testified that soon after the two men arrived, she went to her bedroom to go to sleep, where she was awakened by Tolston, who had climbed into bed with her and began rubbing her back. *Id.* J.S. stated that after an initial confrontation with Tolston, she eventually returned to her bedroom and fell asleep. *Id.* J.S. testified that she woke up later to find that Tolston was naked and lying next to her. *Id.* According to J.S.'s testimony, her nightgown was pulled up to her chest, Tolston's hand was in her panties, and his fingers were inside her vagina. J.S. testified that she jumped up and told Tolston to leave. *Id.* She stated that she left the apartment shortly after the incident and reported what happened to the police. *Id.* Based on J.S.'s testimony, the court of appeals found that there was substantial evidence to support the conviction. *Id.*

Tolston subsequently filed a timely petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure (2003), which was denied following a hearing. We affirmed the denial of Tolston's Rule 37.1 petition. *Tolston v. State*, CR 04-480 (Ark. June 16, 2005) (unpublished per curiam).

3

IV. *Grounds for Relief*

In his first claim for coram nobis relief, Tolston contends that the trial court erred by applying a definition of "physically helpless" that was not in effect when the offense was committed. Specifically, Tolston contends that the acts for which he was tried and convicted did not constitute rape under the law in effect in January 2001. The felony information that Tolston attached to his petition alleged that Tolston violated Arkansas Code Annotated section 5-14-103 (Repl. 1997) by unlawfully engaging in deviate sexual activity with J.S., who was incapable of consent because she was physically helpless. The definition of "physically helpless" in effect at the time of Tolston's offense is found in Arkansas Code Annotated section 5-14-101(5) (Repl. 1997), which states that a person is physically helpless when that person is unconscious or physically unable to communicate lack of consent. This definition was amended by the General Assembly in April 2001 to add that a person is also physically helpless when he or she is "rendered unaware the sexual act is occurring." Ark. Code Ann. § 5-14-101(5)(B) (Supp. 2001). Tolston argues that because the victim was merely asleep, she was not "physically helpless" as those terms were defined at the time of the offense.

On direct appeal, Tolston made the same allegation that he raises in this petition with respect to the application of an erroneous code provision. *Tolston*, CACR 02-447. Even though the court of appeals found that the issue had not been properly preserved, it noted that "there is nothing in the record to support Tolston's contention that the trial court did

4

not apply the statute in effect at the time of his offense." *Id.*, slip op. at 1.[2] In any event, Tolston's assertion of trial error is not within the purview of a coram nobis proceeding. *Martinez-Marmol v. State*, 2018 Ark. 145, 544 S.W.3d 49.

In his second claim for coram nobis relief, Tolston raises a *Brady* claim, contending that the victim's medical record was withheld by the prosecutor. To establish a *Brady* violation, the petitioner must satisfy three elements: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *Henington v. State*, 2018 Ark. 279, 556 S.W.3d 518. The mere fact that a petitioner alleges a *Brady* violation is not sufficient to provide a basis for error coram nobis relief. *Davis v. State*, 2019 Ark. 172, 574 S.W.3d 666. When determining whether a *Brady* violation has occurred, it must first be established by the petitioner that the material was available to the State prior to trial and that the defense did not have it. *Jackson v. State*, 2018 Ark. 227, 549 S.W.3d 356. When a petitioner alleges a *Brady* violation as the basis for his or her claim of relief in coram nobis proceedings, the facts alleged in the petition must establish that there was evidence withheld that was both material and prejudicial such as to have prevented rendition of the judgment had it been known at the time of trial. *Martinez-Marmol*, 2018 Ark. 145, 544 S.W.3d 49. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.*

---

[2]Tolston raised the same issue in the Rule 37.1 proceedings. We affirmed the trial court's rejection of the claim, finding that Tolston was not prejudiced by his counsel's failure to preserve the issue on appeal. *Tolston*, CR 04-480.

Tolston has not shown that the prosecutor withheld this evidence and has fallen short of meeting his burden of establishing that there is a reasonable probability that the judgment of conviction would not have been rendered or would have been prevented had the prosecutor not withheld specific exculpatory evidence from the defense. *Id.* According to Tolston, the prosecutor withheld a medical report generated by the hospital where the victim was examined shortly after she was raped. Tolston insists that the medical report contained material and exculpatory evidence in that it would have shown no physical evidence of rape. However, a transcript attached to Tolston's petition refutes his claim that evidence was withheld from the defense. The transcript of the testimony of Tolston's trial counsel given during the Rule 37.1 hearing demonstrates that Tolston's trial counsel was aware that the victim had been examined by an emergency-room physician and that the prosecutor had informed counsel that there was no corroborating physical evidence available from either the medical examination or the crime lab. Therefore, the existence of medical records that described the absence of corroborating physical evidence was known to defense counsel.

Moreover, even if the prosecutor had withheld this medical report, there is no showing that the outcome of the trial would have changed as a result. It is well established that the uncorroborated testimony of a rape victim is sufficient to support a conviction if the testimony satisfies the statutory elements of rape. *Walters v. State*, 358 Ark. 439, 193 S.W.3d 257 (2004). Here, J.S.'s testimony satisfied the statutory elements under Arkansas Code Annotated section 5-14-103 in that she was physically helpless and unable to consent

6

at the time of the rape.[3] A medical examination that revealed no evidence of a sexual assault would not have changed the outcome of the trial.

Petition denied.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. Put simply, in a rape case where the evidence boils down to the victim's testimony against the defendant's, the results of a sexual-assault kit performed hours after the incident occurred is material evidence, and the State's suppression of that evidence is a *Brady* violation.

To establish a *Brady* violation for evidence withheld from the defense by the prosecution, the petitioner must satisfy three elements: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *Henington v. State*, 2018 Ark. 279, 556 S.W.3d 518. *Brady* violations are cognizable for relief in error coram nobis proceedings. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38. To establish prejudice, the petitioner must show that the evidence was material. *Martinez-Marmol v. State*, 2018 Ark. 145, 544 S.W.3d 49. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id*. "The question is not whether the

---

[3]The Arkansas Court of Appeals noted in its opinion affirming Tolston's conviction that the commentary to section 5-14-101(5) states that the term "unconscious" means "any condition from a deep sleep to complete insensibility as a result of illness or the excessive use of an intoxicating substance" and refers to *Harvey v. State*, 53 Ark. 425, 14 S.W. 645 (1890), in which this court stated that a person who is asleep is incapable of resisting a rape. *Tolston*, CACR 02-447.

defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Applying these standards to the case at issue, one cannot reasonably maintain that the results of the rape kit are not material evidence in this case. Based upon the pre-trial statements and the testimony at trial, the victim's and the defendant's respective versions of events are actually quite similar. By both accounts, the defendant's presence at the victim's apartment was social, and by both accounts, they were alone in bed together for at least some portion of the night that was consensual but not sexual. The stories diverge on a few factual points, the most important of which is as follows:

> The victim says that at one point, she "woke up" with her down-to-the-ankles nightgown pulled up "around her chest," and the defendant's "fingers" inside of her vagina. The defendant disagrees; he says the most that happened was that he squeezed the victim's bottom while she lay across his chest, and that any such contact was always through the victim's nightgown. He denies penetration of any kind.

It should be noted that the victim and the defendant were the only witnesses to the incident itself.

Shortly after the incident, the victim underwent a sexual-assault evaluation at Baptist Hospital. The results of this evaluation were taken by the responding police officer and later submitted to the state crime lab by the detective overseeing the case. However, despite an all-encompassing discovery motion from the defendant, the results of the sexual-assault

8

evaluation were omitted from the discovery file later provided to the defense by the prosecution. These facts are explicitly borne out in the record and appear undisputed at this juncture. The record does include references to the Baptist Hospital visit that would have been available to the defense at the time of trial, but when Tolston's trial attorney (who had just obtained her attorney's license approximately six months beforehand) inquired about the sexual-assault examination before trial, the prosecutor told her there was "no evidence." In short, the record indicates that the State had the results of the sexual-assault examination and that Tolston was taken to trial without those results being turned over to the defense.

In his petition, Tolston contends that the results of the sexual-assault examination would have shown that the examiners found no indication of penetration— a contention that the State does not specifically deny in its response. Instead, the State argues that Tolston is making an "unfounded and improbable assumption" that "the insertion of his fingers into the vagina of a sleeping victim would necessarily result in physical evidence that would be documented by the examination," and that his argument falls to "common sense and a rudimentary understanding of physiology." "Thus," the State concludes, "the medical report," which still no one else has seen, "is not exculpatory or impeaching." Citing *Walters v. State*, 358 Ark. 439, 193 S.W.3d 257 (2004), the majority then denies Tolston's petition, noting that even if the prosecutor had withheld this medical report, there is no indication that the outcome of the trial would have been different since "the uncorroborated testimony of a rape victim is sufficient to support a conviction if the testimony satisfies the statutory elements of rape."

9

But that is not the question before the court. *Walters* was a sufficiency-of-the-evidence case on direct appeal in which the appellate court considers only the evidence that supports the guilty verdict and reviews that evidence in the light most favorable to the prosecution; this is a *Brady* claim in the postconviction context. The question here is not whether the victim's testimony alone could satisfy the statutorily defined elements of rape, but whether the fact-finder at trial, in considering the victim's testimony and other evidence in the case, might have concluded differently had this item of evidence been disclosed with the rest.

The prosecution's burden of proof in a criminal case is guilt beyond a reasonable doubt, and as far as the element of penetration is concerned, it was the victim's word against the defendant's. Without knowing the specific contents of the report or the level of detail contained therein, perhaps the State is correct in its assertion that the fact-finder at trial *still could have* determined that the State had satisfied its burden of proof—even if the examination results had been disclosed and their impact considered. But one cannot reasonably maintain that this evidence was not "material" to the case. The disclosure of this evidence very well could have been the difference in the verdict. It should have been disclosed and discussed. The fact that this evidence was instead suppressed "undermines confidence" in the verdict, and in this situation, a new trial is required. *See, e.g.*, *Kyles*, 514 U.S. 419.

I dissent.

*Roy L. Tolston*, pro se petitioner.

*Leslie Rutledge*, Att'y Gen., by: *Chris R. Warthen*, Ass't Att'y Gen., for respondent.