Cite as 2020 Ark. 253

# SUPREME COURT OF ARKANSAS

No. CR-84-9

| | | |
|---|---|---|
| CARL LEE LINELL | | Opinion Delivered: June 18, 2020 |
| | PETITIONER | |
| V. | | |
| | | PRO SE PETITION TO REINVEST |
| STATE OF ARKANSAS | | JURISDICTION IN THE TRIAL COURT |
| | RESPONDENT | TO CONSIDER A PETITION FOR WRIT |
| | | OF ERROR CORAM NOBIS; MOTION |
| | | FOR APPOINTMENT OF COUNSEL |
| | | [JEFFERSON COUNTY CIRCUIT |
| | | COURT, NO. 35CR-83-26] |
| | | |
| | | PETITION AND MOTION DENIED. |

**RHONDA K. WOOD, Associate Justice**

Carl Lee Linell petitions this court for permission to file a writ of error coram nobis in the trial court. Additionally, he has filed a motion for appointment of counsel. Linell raises four claims that are not cognizable in a coram nobis proceeding. His fifth claim, an alleged *Brady* violation, also fails. Because Linell does not demonstrate that he is entitled to coram nobis relief, we deny his petition and the motion for appointment of counsel.

In 1983, a jury convicted Linell of two counts of capital-felony murder for the deaths of Charles and Louise Misho and one count of attempted capital-felony murder of Austin Patterson. The jury sentenced him to life without parole on the murder charges and twenty years' imprisonment for the attempted-murder charge, to be served consecutively. We affirmed on direct appeal. *Linell v. State*, 283 Ark. 162, 671 S.W.2d 741 (1984) (*Linell I*). He sought

postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure, and we affirmed. *Linell v. State*, CR 84-9 (Ark. July 7, 1986) (unpublished per curiam) (*Linell II*).

According to the direct-appeal record, Linell's codefendant, Carvin Thompson, testified at trial and admitted that he and Linell had planned to rob the Mishos. Thompson claimed that Linell shot and killed both victims and shot and wounded Patterson when Patterson approached the scene. Thompson stated that Linell took Louise's purse after the shooting. Patterson testified that he did not see the assailant but saw someone crouching near the scene of the crime whom Patterson was unable to describe as either black or white, male or female.

## I. *Nature of the Writ*

Once a judgment is affirmed on appeal, a trial court cannot proceed with a petition for writ of error coram nobis unless this court grants permission and reinstates jurisdiction. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *Id.* In coram nobis proceedings, the strong presumption is that the judgment of conviction is valid. *Id.* A petitioner has the burden to demonstrate a fundamental error of fact extrinsic to the record. *Id.* The court issues the writ in compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.*

A writ of error coram nobis is available for addressing certain errors, that are found in one of four categories: (1) insanity at the time of trial; (2) a coerced guilty plea; (3) material evidence withheld by the prosecutor in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); or (4) a third-party confession to the crime during the time between conviction and

appeal.[1] *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38. The petitioner must specify the facts relied on and not merely state conclusions. *McCullough v. State*, 2017 Ark. 292, 528 S.W.3d 833.

## II. *Claims for Issuance of the Writ*

Linell raises four claims that are not cognizable in a proceeding for writ of error coram nobis: ineffective assistance of counsel, violation of right to counsel by obtaining incriminating statements, presentation of false evidence, and cumulative error. None of these claims fall under the four categories listed above. One cannot use a coram nobis proceeding to substitute for claims of ineffective assistance of counsel under Rule 37. *McCullough v. State*, 2020 Ark. 49. Moreover, challenges to the sufficiency of the evidence constitute a direct attack on the judgment and are not cognizable in a coram nobis proceeding. *Carner v. State*, 2018 Ark. 20, 535 S.W.3d 634. A coram nobis proceeding is not a means to merely contradict a fact already adjudicated at trial. *Joiner v. State*, 2019 Ark. 279, 585 S.W.3d 161.

Linell also asserts a *Brady* violation, which is cognizable in coram nobis proceedings. An allegation alone, however, is not a sufficient basis for error coram nobis relief. *Davis v. State*, 2019 Ark. 172, 574 S.W.3d 666. To establish a *Brady* violation, three elements are required: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the State must have suppressed the evidence, either willfully or inadvertently; and (3) prejudice must have ensued. *Ivory v. State*, 2019 Ark. 386, 589 S.W.3d

---

[1] This court has extended the writ in extraordinary circumstances with precise limitations. *See Strawhacker v. State*, 2016 Ark. 348, 500 S.W.3d 716.

3

378. When a petitioner alleges a *Brady* violation in coram nobis proceedings, the facts alleged in the petition must establish that there was evidence withheld that was both material and prejudicial. *Martinez-Marmol v. State*, 2018 Ark. 145, 544 S.W.3d 49. Evidence is material if there is a reasonable probability that, had the State disclosed the evidence, the result of the proceeding would have been different. *Id.*

Linell's specific *Brady* claim is that the surviving victim, Patterson, gave a statement that described the shooter as a white male. Linell contends that because he is not Caucasian, this statement would be exculpatory and material evidence. Linell also argues that the statement would contradict Patterson's testimony at trial that he could not identify the race of the shooter. But there is no documentation of Patterson's inconsistent statement. Linell claims that Detective McVay prepared a summary report in which McVay noted a conversation with Sergeant Simmons, who stated that he had interviewed Patterson at the hospital and that Patterson reported that a white male had shot him. Linell contends the State withheld Detective McVay's summary report.

Linell fails to provide the alleged report that would support his claim. He instead alleges that he has been trying to obtain it since 1983. He does not explain how he obtained knowledge of the report, or its contents, so that we could afford weight to his claim that it exists. The burden is on the petitioner in an application for a writ of error coram nobis to make a full disclosure of specific facts that support the merit of a *Brady* claim. *Davis*, 2019 Ark. 172, 574 S.W.3d 666. In view of the lack of specifics or of any evidence corroborating Linell's claim of the existence of the report, we find that he has failed to meet his burden in petitioning for a writ of error coram nobis.

The final issue involves Linell's request for an attorney. The appointment of counsel in postconviction proceedings is discretionary and not mandated. *Lane v. State*, 2019 Ark. 5, 564 S.W.3d 524. To demonstrate entitlement to the appointment of counsel, a petitioner must make a substantial showing that a petition for relief includes a meritorious claim. *Id.* For the reasons stated above, Linell has not made a meritorious claim, and he is not entitled to appointment of counsel.

Petition and motion denied.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. We may not know how Linell has managed to obtain the excerpts from Detective McVey's document labeled "DABS-R" (which reflect that the surviving victim described his assailant as a white male), but the excerpts do appear to be accurate and authentic. The State certainly does not contest their accuracy or authenticity. Furthermore, this information was not contained in any of the State's evidentiary disclosures to the defendant, which were filed and made part of the record. Accordingly, Linell has stated a claim for a *Brady* violation—that the prosecution, deliberately or inadvertently, suppressed material evidence. *Brady v. Maryland*, 373 U.S. 83 (1963). The fact that a shooting victim described his assailant as a *white* male, in a prosecution where the defendant is a *black* male, is exculpatory evidence that must be provided to the defense. Linell should have received this information before trial. The fact that Linell never received the information also prevented the jury from consequently considering the information. The identity of the assailant was the central issue at trial, and the surviving victim's (actual)

5

description of the assailant could have significantly impacted the outcome. Since the jury never received this information, we cannot afford confidence to its verdict. Accordingly, Linell's *Brady* claim demands an evidentiary hearing where the contents and authenticity of these documents can be tested in an adversarial context.

The need for a hearing on Linell's *Brady* claim is further underscored by his FOIA litigation. In a split decision last year, this court affirmed the circuit court's denial of Linell's FOIA petition. *Linell v. State*, 2019 Ark. 25, 565 S.W.3d 482. Linell was seeking access to the investigation records held by the Arkansas State Crime Laboratory related to this murder investigation. Presumably, those records would include the ballistics report on the .22 revolver owned by James Nelson. Nelson, who wrecked his truck minutes after the shooting (note that one witness saw a truck speeding away immediately after victims were shot), was the first suspect in this murder investigation. He was apparently excluded as a suspect after the crime lab reported that his .22 revolver did not match the bullet fragments recovered from the victims' gunshot wounds. However, that report was not contained in any of the prosecution's disclosures to the defense, which were filed and made part of the record. There is no indication that the report has ever been produced. Nelson, it should be noted, is a white male.

The missing evidence could have significantly impacted the outcome of Linell's trial. After reviewing the record, it is apparent that the investigation and prosecution of Linell was fraught with irregularity—and even acknowledged falsity. After Nelson was "excluded" as a suspect, the investigation's focus apparently shifted to Carvin Thompson and/or Linell. However, there is literally no explanation anywhere in the record of what led to Thompson and Linell being considered suspects. Thompson, who testified for the State at Linell's trial,

acknowledged on the witness stand that he was repeatedly lying to convict Linell and to protect himself. For example, the following exchange occurred between Thompson and Linell's defense attorney:

DEFENSE ATTORNEY: Well, initially, you told them that you saw him open the door, pull the man out, slam him to the ground, and that he shot the man on the ground next to the truck. That was your initial statement, wasn't it?

THOMPSON: Yes, sir.

DEFENSE ATTORNEY: All of that is a bonafided [sic] lie?

THOMPSON: Yes, sir.

DEFENSE ATTORNEY: Then you said they rolled around on the ground and went up against the side of the bar and grill and fought for a while, didn't you?

THOMPSON: Yes, sir.

DEFENSE ATTORNEY: All of that is a lie?

THOMPSON: Yes, sir.

DEFENSE ATTORNEY: And then you said that they fought until they got to the edge of the building, didn't you?

THOMPSON: Yes, sir.

DEFENSE ATTORNEY: And all of that is a lie?

THOMPSON: Yes, sir.

DEFENSE ATTORNEY: Then did the Prosecutor tell you that it couldn't happen that way, and you changed your story?

THOMPSON: The Prosecutor never did tell me, the detective told me.

7

| DEFENSE ATTORNEY: | Oh, the detective told you that it couldn't happen that way, and you changed your story? |
| THOMPSON: | Yes, sir. |

Such was typical of Thompson's testimony at trial. At one point, the following exchange occurred:

| DEFENSE ATTORNEY: | And you gave the police two or three different versions of what occurred. [Plus a "fourth" statement in a handwritten document Thompson had been testifying about on cross-examination.] And, now, you come in here and give the jury a fifth one. Which one do you want them to take? |
| THOMPSON: | The one they believe. |

...

| DEFENSE ATTORNEY: | So, if you take an oath to tell the whole truth and nothing but the truth, you will tell the truth, but if you are just talking to me and these folks over here, you will lie to them, is that what you are telling us? |
| THOMPSON: | No, sir. I mean, I tell the truth, you know, to help myself. |

Outside of Linell's testimony, the State's evidence against Linell was conflicting and circumstantial. There was zero exploration of any relationship between Nelson and Thompson.

We cannot continue to ignore these situations. Linell has stated a viable *Brady* claim, and his claim cannot be fairly assessed without an evidentiary hearing. This court must be vigilant to avoid even the appearance of impropriety. Rejecting a claim like Linell's without even affording him a hearing falls far short of what justice demands. Instead, we should (1)

reinvest jurisdiction in the trial court to consider the writ of error coram nobis, (2) appoint Linell counsel, and (3) order discovery.

I dissent.

*Carl Lee Linell*, pro se petitioner.

*Leslie Rutledge*, Att'y Gen., by:  *Brad Newman*, Ass't Att'y Gen., for respondent.