# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-1742
_____

Johnny Sittner

*Petitioner - Appellant*

v.

Michael Bowersox

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 17, 2020
Filed: August 11, 2020

_____

Before KELLY, MELLOY, and KOBES, Circuit Judges.

_____

MELLOY, Circuit Judge.

Petitioner Johnny Sittner appeals from a judgment dismissing his petition for a writ of habeas corpus brought under 28 U.S.C. § 2254. Sittner raises two grounds for relief, both under the Sixth Amendment. We affirm.

In April 2009, Sittner was tried by a jury on charges of first-degree statutory rape, first-degree sodomy, and two counts of incest based on allegations that Sittner sexually abused his stepdaughter (S.S.) starting when she was nine years old. At trial, S.S., who was then fifteen, testified for the State. The State also offered the testimony of Dina Vitoux, a licensed clinical social worker at the Children's Advocacy Center of East Central Missouri. Vitoux's testimony was based on her "extended evaluation" of S.S. when the abuse was first discovered. The trial court recognized Vitoux as an expert witness in the field of child sexual abuse. Vitoux testified as to her evaluation of S.S. and the process of evaluating child victims more generally. Vitoux explained that several factors are used to determine the potential accuracy of a child's statements, including: content (e.g., sensory details and "unusual sexual knowledge" for age), context, consistency, emotion, and motive. Vitoux testified generally about how the factors applied to S.S.'s statements. Over objection from defense counsel, Vitoux testified that S.S. had "unusual sexual knowledge" for her age.

In a bench conference prior to cross-examination, defense counsel requested permission to ask Vitoux about information Vitoux had referenced pre-trial but did not address in her direct-examination testimony: statements S.S. had made during the extended evaluation that disclosed previous sexual abuse by men other than Sittner. Sittner wanted the evidence of other abuse admitted in order to show a potential source, other than Sittner, for S.S.'s unusual sexual knowledge. Defense counsel argued the admission of such testimony was a matter of Sittner's due process rights. The State argued the testimony was not allowed under Missouri's rape shield statute, Mo. Rev. Stat. § 491.015, and was also not necessary given the limited nature of Vitoux's testimony as to "unusual sexual knowledge" on direct examination. The trial court denied Sittner's request, reasoning that by not putting excessive emphasis on the subject of S.S.'s unusual sexual knowledge, the State did not "open the door" for defense counsel to ask questions about additional sources of abuse. The trial

court also instructed counsel to abstain from asking any further questions on this topic. All parties complied.

The jury convicted Sittner on all charges. After unsuccessfully pursuing relief in state court,[1] Sittner filed a petition for habeas corpus in the United States District Court for the Eastern District of Missouri, raising nine grounds for relief. The district court[2] denied Sittner's petition on all grounds and issued a certificate of appealability on two grounds. On appeal, Sittner argues the district court should have found that, under the Sixth Amendment to the United States Constitution, (1) his right to confront witnesses against him was violated by the trial court's exclusion of evidence, and (2) his right to effective assistance of counsel was violated by his trial counsel's failure to adequately object to Vitoux's testimony as impermissible opinion testimony concerning the credibility of S.S.

II.

On a district court's denial of habeas relief, we review findings of fact for clear error and conclusions of law de novo. Ervin v. Bowersox, 892 F.3d 979, 983 (8th Cir. 2018). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Sittner must show the state court's decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence adduced in state court. 28 U.S.C. § 2254(d)(1)–(2); see also Shelton v. Mapes, 821 F.3d 941, 946 (8th Cir. 2016) (stating that the standard of review under § 2254 "creates a substantially higher threshold for obtaining relief

[1]See State v. Sittner, 294 S.W.3d 90 (Mo. Ct. App. 2009) (direct appeal); Sittner v. State, 326 S.W.3d 551 (Mo. Ct. App. 2010) (post-conviction relief).

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

-3-

than de novo review" (quoting Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted))).

Sittner first argues he should have been allowed to question Vitoux regarding S.S.'s out-of-court statements indicating she had previously been sexually abused by individuals other than Sittner. Sittner argues the denial of his opportunity to cross-examine Vitoux on this subject violated his Sixth Amendment right to confront witnesses against him. Generally, in the habeas context, "[q]uestions regarding admissibility of evidence are matters of state law." Rousan v. Roper, 436 F.3d 951, 958 (8th Cir. 2006) (quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993)). "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir. 2006). Therefore, to succeed, Sittner "must show 'that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.'" Rousan, 436 F.3d at 958–59 (quoting Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995)).

The Sixth Amendment guarantees a criminal defendant the "right to be confronted with the witnesses against him," including "the right to conduct reasonable cross-examination." Olden v. Kentucky, 488 U.S. 227, 231 (1988) (per curiam). Pursuant to this right, a criminal defendant must be given "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." United States v. Jasso, 701 F.3d 314, 316 (8th Cir. 2012) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam)). Accordingly, the right to cross-examination "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Michigan v. Lucas, 500 U.S. 145, 149 (1991) (quoting Rock v. Arkansas, 483 U.S. 44, 55 (1987)). Any "[r]estrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate

to the purposes they are designed to serve.'" Id. at 151 (quoting Rock, 483 U.S. at 56).

On direct review, the Missouri Court of Appeals ruled the trial court did not abuse its discretion in excluding the evidence because "the State did not use evidence of S.S.'s unusual sexual knowledge to establish Sittner's guilt," and because S.S's "knowledge merely arose as one [factor] Vitoux used to determine the accuracy of S.S.'s statements." Sittner, 294 S.W.3d at 91. It further concluded that "[a]ll relevant evidence was available to the jury, no rights of the defendant were violated, and the privacy of the victim was preserved." Id. at 92.

Missouri's rape shield statute precludes the admission of all "opinion and reputation evidence of the complaining witness'[s] prior sexual conduct" and, subject to four exceptions, "specific instances of the complaining witness'[s] prior sexual conduct." Mo. Rev. Stat. § 491.015; see also id. § 491.015.1(2) (listing as an exception, "[e]vidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease"). If evidence falls within a statutory exception, the evidence is admissible only to the extent the trial court finds it relevant to a material fact or issue. Id. § 491.015.2. Here, Sittner's trial counsel did not argue the proffered evidence fell into an exception. Instead, defense counsel relied upon arguments related to fundamental fairness and Sittner's right to due process.

In State v. Douglas, 797 S.W.2d 532, 535 (Mo. Ct. App. 1990), the Missouri Court of Appeals explained that Missouri's "rape shield statute may not be applied so strictly as to deprive the defendant of the fair trial comprehended by the concept of due process." To that end, Missouri courts have allowed a criminal defendant to present evidence about the victim's prior other abuse if the State highlights the victim's unusual sexual knowledge during trial. As explained in State v. Samuels, 88 S.W.3d 71, 82 (Mo. Ct. App. 2002):

Typically, in a case of this nature, young victims will describe inappropriate experiences in words they should not know. The State has no choice but to present the victim's description of the events. However, we find that for purposes of considering a defendant's due process rights in a case such as the one at bar, there is an important distinction between evidence that is offered as part of presenting the facts of the case, i.e., an essential part of the State's case in chief, and evidence or comments by the State that go the extra step to highlight the testimony to suggest that the defendant is . . . the sole source of the precocious sexual knowledge. If the latter category of evidence is presented, basic principles of fairness entitle the defendant to counter with evidence that there are other potential sources of the . . . knowledge.

Compare Samuels, 88 S.W.3d at 82 (ruling defendant should have been allowed to put on evidence showing an alternative source of one victim's "unusual sexual knowledge" where the State emphasized the importance of the victim's "unusual sexual knowledge" in opening statement, during an expert's testimony, and in closing argument), with State v. Sales, 58 S.W.3d 554, 559 (Mo. Ct. App. 2001) (determining the defendant's right to put on evidence showing an alternative source was not violated because the State "never presented evidence . . . claiming or suggesting that [the victim's] precocious sexual knowledge was acquired from an encounter with [the defendant]"). Here, the State mentioned, but did not emphasize, Vitoux's testimony as to S.S.'s unusual sexual knowledge.[3]

To succeed under AEDPA, Sittner must show that the Missouri Court of Appeals' application of this nuanced law in his case was contrary to, or an

---

[3]In closing argument, the State referenced Vitoux's description of the factors pertaining to child disclosure only briefly, saying: "Vitoux testified about [S.S.]'s disclosures. They were consistent. They were what she expected a child under these circumstances to go through. They were appropriate disclosures."

unreasonable application of, *clearly established* Supreme Court precedent. He contends Olden v. Kentucky, 488 U.S. 227 (1988), Delaware v. Van Arsdall, 475 U.S. 673 (1986), and Davis v. Alaska, 415 U.S. 308 (1974), support his claim that his rights were violated by being unable to elicit testimony about other potential sources of S.S.'s sexual knowledge. These cases show that the Supreme Court has recognized constitutional rights can trump evidentiary rules and privileges in some circumstances. In each, the Court found the trial court violated a defendant's right to cross-examination by excluding evidence relatively likely "to show a prototypical form of bias on the part of" a critical witness. Van Arsdall, 475 U.S. at 680; see also id. (finding that "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination"); Olden 488 U.S. at 232 (explaining that speculative concern for racial prejudice against a witness for the prosecution could not "justify exclusion of cross-examination with such strong potential to demonstrate the falsity of [the witness's] testimony"); Davis, 415 U.S. at 318–20 (finding that Alaska's policy of protecting the anonymity of juvenile-offender records had to yield to a defendant's right to cross-examine a "crucial identification witness" as to the grounds for that witness's potential bias). While these cases establish the type of balancing of interests a court must conduct when faced with similar questions, they do not set forth "clearly established federal law," 28 U.S.C. § 2254(d)(1), controlling the outcome of the question presented in Sittner's case.

Here, Sittner was given a sufficient opportunity to cross-examine and impeach the witnesses against him at trial. Sittner's defense strategy was designed to show S.S. was motivated to falsely accuse him as a form of revenge for his disciplinary style at home. The strategy did not turn on the admission of the excluded evidence. Further, Sittner had a full opportunity to cross-examine Vitoux on issues specifically related to his defense strategy. Defense counsel asked Vitoux about her expertise on child victims making false accusations and their possible motives for doing so. Nor is there any indication that the proffered testimony was highly probative evidence of

S.S.'s motive to falsely accuse Sittner. There was already evidence in the record showing S.S. had alternative sources for her sexual knowledge other than Sittner's physical abuse. That is, S.S. testified that Sittner showed her pornographic images on his computer. Thus, the trial court's ruling to exclude extrinsic evidence about other sources of abuse was directly related, and proportionate, to the State's interest in protecting the privacy of child victims of sexual crimes and did not bar Sittner from establishing his defense strategy. Under the restrictive limits of habeas review, the state courts' adjudication of Sittner's claim was neither contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent.[4]

Sittner next argues his trial counsel's failure to object to Vitoux's testimony denied him effective assistance of counsel. Specifically, Sittner argues counsel should have objected to Vitoux's testimony about the factors that demonstrate the accuracy of a child victim's testimony. He argues the testimony, as offered, was an impermissible opinion as to the credibility of S.S., the complaining witness. "A defendant who claims to have been deprived of effective assistance of counsel must show: (1) that his lawyer's representation fell below an objective standard of reasonableness; and (2) that the lawyer's deficient performance prejudiced the defendant." Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (citing Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).

---

[4]Sittner briefly argues the state court analysis was also based on an unreasonable determination of the facts. He argues the Missouri Court of Appeals was wrong to characterize the State's case as having "not *use[d]* evidence of S.S.'s unusual sexual knowledge to establish Sittner's guilt." Sittner, 294 S.W.3d at 91 (emphasis added). Sittner concedes that the evidence of S.S.'s sexual knowledge was not *emphasized*. While we agree that the state court's choice of words could have been more precise, this does not rise to the level of an unreasonable determination of the facts.

Expert testimony may be admissible if it aids the jury in areas that are outside of common knowledge or experience. State v. Rogers, 529 S.W.3d 906, 911 (Mo. Ct. App. 2017). In Missouri, expert testimony about how a child behaves when disclosing abuse is relevant in a sexual-crimes case precisely because that topic is an area outside an ordinary juror's experience. State v. Williams, 858 S.W.2d 796, 799 (Mo. Ct. App. 1993) ("Expert testimony in child abuse cases plays a useful role by disabusing the jury of some widely held misconceptions about rape and rape victims, so that it may evaluate the evidence free of the constraints of the popular myths." (citations omitted)). As such, "general profile evidence has been accepted to explain victim behavior that might appear unusual to a lay juror, not, however, to prove that sexual abuse occurred." Id. But, the expert testimony cannot comment on the credibility or veracity of the victim—credibility is a matter for the jury alone to decide. State v. Baker, 422 S.W.3d 508, 513–14 (Mo. Ct. App. 2014).

In a memorandum decision, the Missouri Court of Appeals explained that Vitoux's testimony was admissible because it appropriately discussed her expertise with child victims disclosing and recanting sexual abuse, as well as factors she considered in determining whether a child was telling the truth. Concededly, this comes close to opining as to the veracity of the victim. It does not, however, cross any line as drawn under AEDPA's limited review. Because Vitoux's testimony was admissible, any objection by Sittner's trial counsel would have been without merit. Failure to raise a meritless objection cannot support a claim of ineffective assistance. See Gray v. Bowersox, 281 F.3d 749, 756 n.3 (8th Cir. 2002). The Missouri Court of Appeals concluded that the jurors were permitted to determine S.S.'s credibility on their own, aided by, among other things, Vitoux's observations. This is supported by the record. The Missouri Court of Appeals properly applied the governing legal rule from Strickland. See Williams v. Taylor, 529 U.S. 362, 413 (2000). The state courts' adjudication of Sittner's claim was neither contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent.

Finally, Sittner argues the district court wrongly denied his request for an evidentiary hearing. He appears to have sought an evidentiary hearing to explore the veracity of his own attorney's claim that it was reasonable trial strategy to not raise an objection to Vitoux's admissible testimony. We review a district court's denial of a habeas petitioner's request for an evidentiary hearing for an abuse of discretion. Johnston v. Luebbers, 288 F.3d 1048, 1059–60 (8th Cir. 2002). A "district court must hold such a hearing if the petitioner has alleged disputed facts which, if proved, would entitle him to habeas relief." Smith v. Bowersox, 311 F.3d 915, 921 (8th Cir. 2002). Here, any fair reading of the trial transcript shows that trial counsel worked to limit the scope of Vitoux's testimony, thoroughly cross-examined Vitoux about S.S.'s motives to lie, and was within reason to not make meritless objections during direct examination. Counsel objected to the State's attempts to garner specific testimony from Vitoux, but allowed Vitoux to answer general questions about the factors that demonstrate the accuracy of a child victim's testimony. The district court did not abuse its discretion in denying Sittner's request for an evidentiary hearing in this case. Sittner has not alleged disputed facts that, if proved, would indicate the Missouri courts acted contrary to, or unreasonably applied, clearly established federal law when they rejected his claims. The district court did not abuse its discretion by concluding that the record contained all the facts necessary to resolve Sittner's claims, and that no further evidentiary development was required.

We affirm the judgment of the district court.

_____