# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-3006
_____

Ray Dansby,

*Petitioner - Appellee*,

v.

Dexter Payne, Director, Arkansas Department of Correction,

*Respondent - Appellant.*

_____

No. 19-3105
_____

Ray Dansby,

*Petitioner - Appellant*,

v.

Dexter Payne, Director, Arkansas Department of Correction,

*Respondent - Appellee.*

_____

Appeals from United States District Court
for the Western District of Arkansas - El Dorado
_____

Submitted: November 16, 2021
Filed: August 25, 2022
_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Ray Dansby was convicted by an Arkansas jury on two counts of capital murder and sentenced to death. After the district court denied his second amended petition for a writ of habeas corpus, this court vacated the dismissal of two claims and remanded for further consideration. *Dansby v. Hobbs*, 766 F.3d 809, 841 (8th Cir. 2014). In the first claim, Dansby alleged that the state trial court had violated his Sixth Amendment right to confront witnesses against him. In the second, he alleged that the prosecution had engaged in misconduct. On remand, the district court denied Dansby's petition with respect to his conviction but granted relief with respect to his sentence of death. We conclude that no relief is warranted, and therefore affirm in part and reverse in part.

I.

This court has considered Dansby's case before, and our discussion of the background is drawn largely from those decisions. As summarized by the Arkansas Supreme Court, *see Dansby v. State*, 893 S.W.2d 331 (Ark. 1995), the evidence at trial showed that on the morning of August 24, 1992, Dansby arrived at the residence of his ex-wife, Brenda Dansby, in El Dorado, Arkansas. Justin Dansby, their eight-year-old son, was in the living room with Ronnie Kimble, Brenda's boyfriend. Justin was home with a cold and watching television, while Kimble was asleep on the couch. Brenda had left earlier to buy orange juice for Justin, and when she returned home, she was confronted by Dansby as she pulled her car into her driveway. Dansby twice ordered her to leave her car, and she eventually complied. Justin testified at trial that he saw Dansby hold Brenda "like a shield" before shooting her in the arm and in the neck.

Greg Riggins, a neighbor from across the street, also offered an account of Brenda's death. According to his trial testimony, Riggins went to his front door after hearing gunshots and witnessed Dansby and Brenda struggling with a revolver. He then saw Dansby knock Brenda down, get the gun from her, and shoot two consecutive rounds into her from two or three feet away. Brenda tried to rise, and Dansby fired again, although Riggins believed the shot missed. After pausing for five or six seconds, Dansby shot Brenda once more, and her body went flat.

Justin testified that Dansby then entered the home and shot Kimble in the chest. Kimble nonetheless was able to retrieve his own gun from beneath the couch. Kimble positioned himself behind the couch and attempted to return fire, but his gun produced only "clicking noises." Dansby chased Kimble to the back of the house, and Justin heard about five more shots. When Justin went to investigate, he saw his father standing over Kimble, kicking him twice and then saying something Justin could not remember. Justin accompanied his father outside the house, where he saw his mother, motionless, with "blood all over her neck." Dansby and Justin walked down the road, and after they separated, Justin called the police.

El Dorado police officers arrived at Brenda's home to find her body outside. They also found an injured Kimble on the floor of the back bedroom, along with a jammed .38 automatic pistol lying under him. Kimble eventually died of his wounds at a local hospital, but not before telling a police detective that Ray Dansby had shot him.

Later the same day, a police officer encountered Dansby, who said, "I'm Ray Dansby. Y'all are looking for me." The officer then took Dansby to the police station, where another officer advised Dansby of his rights. Dansby stated that he had left the scene with two guns, a .32 revolver and a .38 revolver, but had disposed of them where the police would never find them. By Dansby's account, he had armed himself before traveling to Brenda's home because he knew both she and Kimble had

handguns. Dansby explained that he had entered the front door to Brenda's home to find Kimble holding a handgun in his right hand "pointed down." Dansby stated that after an argument, "I just pulled my gun and started shooting."

At trial, prosecutors presented several pieces of evidence beyond the eyewitness testimony of Justin Dansby and Greg Riggins. An autopsy revealed gunshot wounds near Brenda's left ear and on her upper chest. Similar wounds were found on Kimble's chest, right arm, left upper back, and behind his left ear; superficial wounds were present on his left flank. The prosecution also presented testimony that Dansby was scheduled to appear in court on charges of second-degree assault and contempt of court at 9:00 a.m. on the day of the murders. State prosecutors brought those charges after Brenda had provided them with a signed affidavit alleging that Dansby assaulted her.

Also testifying for the prosecution was Dansby's jail cellmate Larry McDuffie, the boyfriend of Dansby's half-sister. McDuffie said that Dansby admitted in jail that he had murdered Kimble and Brenda. Dansby told McDuffie he was "just glad" that Brenda was dead. According to McDuffie, Dansby recounted the following series of events: Dansby first shot Kimble after they "had words" about Brenda's refusal to withdraw the assault charges. Kimble staggered backward into the house. Dansby then shot Brenda as she reached into her purse. Dansby followed Kimble into the house, and shot him several more times. When Dansby exited the house, he found that Brenda was still alive. In response to Brenda's pleas for mercy, Dansby answered, "Well, b—, you done f—ed up cause I'm not gonna leave you out here in these streets when I done killed this man inside," and then shot her once more.

A jury convicted Dansby of two counts of capital murder, and sentenced him to death on both counts. The Arkansas Supreme Court affirmed the conviction and sentence. *Dansby*, 893 S.W.2d at 333. Dansby petitioned for postconviction relief under Arkansas Rule of Criminal Procedure 37. The trial court denied the petition,

and the Arkansas Supreme Court affirmed. *Dansby v. State*, 84 S.W.3d 857 (Ark. 2002).

Dansby filed a petition for a writ of habeas corpus in the district court under 28 U.S.C. § 2254. The district court denied relief on all claims and dismissed the petition. The court then denied Dansby's motion to alter or amend the judgment. The district court granted a limited certificate of appealability, and this court expanded the certificate to encompass all claims that the district court had determined to be procedurally defaulted. We affirmed the district court's decision in part, but vacated the dismissal of two claims and remanded for further consideration of those claims. *Dansby*, 766 F.3d at 841. In the first claim, Dansby alleged that the state trial court violated his Sixth Amendment right to confront witnesses against him. In the second, he alleged that the prosecution violated his due-process rights by withholding material exculpatory evidence and knowingly permitting false testimony.

On remand, the district court denied relief with respect to Dansby's conviction but granted relief from the death sentence and ordered the State to stipulate to a sentence of life imprisonment. The court determined that Dansby's prosecutorial-misconduct claim was procedurally defaulted or, in the alternative, without merit. The court concluded, however, that the state trial court had violated Dansby's constitutional right to confront witnesses against him. The court ruled that the violation was harmless with respect to Dansby's conviction, but reasoned that "the error had a substantial and injurious effect" on the sentence. Both parties have appealed.

II.

The claims at issue concern the trial testimony of Larry McDuffie. Dansby argues first that the state trial court deprived him of his Sixth Amendment right to

confront witnesses against him by limiting his opportunity to cross-examine McDuffie and to introduce extrinsic evidence to impeach him.

## A.

The parties dispute whether our review of Dansby's confrontation claim is subject to the strictures of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA limits when a federal court may grant relief on a claim that was "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). Dansby asserts that the Arkansas Supreme Court did not adjudicate his claim on the merits.

The Arkansas Supreme Court reviewed a ruling of the state trial court. After Dansby was arrested for murder, he was incarcerated with McDuffie in Union County, Arkansas. McDuffie was in jail after his arrest on a pending felony drug charge. Before trial, the prosecution moved *in limine* for an order to preclude the defense from "mentioning or attempting to elicit testimony from any witness regarding the reason for McDuffie's incarceration, and pending charges or attendant matters."

The trial court ruled that charges that had been filed in the past against McDuffie that did not result in convictions were "clearly inadmissible and should not be referred to because the witness may not be impeached in that manner." The court provided that Dansby could inquire whether McDuffie had served as a confidential informant for the El Dorado police department and whether he had been paid by the department for information in the past.

Dansby sought additional leeway to elicit testimony designed to show McDuffie's bias. In a brief and at a pretrial hearing, Dansby claimed that McDuffie had received special treatment from the State. He alleged that McDuffie had a history of working as an informant for local police, that he had been in and out of jail three

or four times in recent months, that the State's treatment of previous criminal cases against him was inconsistent with its handling of other cases, and that he was not sanctioned for violating conditions of release.

The trial court ordered that Dansby could inquire whether McDuffie had received promises of leniency or guarantees of immunity, but could not present evidence about "extrinsic matters which would call upon the jury to perform a feat of speculation or conjecture in order to relate it to [the] alleged bias." If McDuffie denied or failed to admit facts that tended to show bias, however, then Dansby would be entitled to produce extrinsic evidence to rebut McDuffie's testimony. The court cautioned that unless there was "direct evidence of an agreement of a promise of immunity or something along that nature," Dansby would be "in the realm of speculation and conjecture."

The Arkansas Supreme Court upheld the trial court's ruling. First, the court determined that the trial court correctly prevented Dansby from attacking McDuffie's credibility based on evidence of prior criminal activity for which McDuffie had not been convicted. *Dansby*, 893 S.W.2d at 338. Second, the court reasoned that the trial court correctly allowed Dansby "to explore the area of bias" through cross-examination but not with extrinsic evidence. *Id.* at 338-39. The court explained that a defendant had the right to prove facts by extrinsic evidence only if the witness denied or failed fully to admit pertinent facts. *Id.* Finally, the court opined that Dansby's proffered extrinsic evidence would have called for "the jury to perform a feat of speculation or conjecture" to connect it to the alleged bias. *Id.* at 339.

As a starting point, we presume that a state court has adjudicated a federal claim on the merits if the defendant presented the claim to the state court and the court denied relief. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). This presumption applies even when the state court's opinion does not expressly address the claim. *Johnson v. Williams*, 568 U.S. 289, 300-01 (2013).

-7-

Dansby has not rebutted the presumption of adjudication. Nothing in the opinion of the Arkansas Supreme Court suggests that it disposed of Dansby's confrontation claim on procedural grounds. *See Kenley v. Bowersox*, 275 F.3d 709, 711 (8th Cir. 2002). Nor is it likely that the court "simply overlooked" the claim. *Johnson*, 568 U.S. at 300-01. In his briefing before the state supreme court, Dansby argued that the trial court did not give adequate weight to his confrontation rights when it limited the scope of his cross-examination. The Arkansas Supreme Court then affirmed the trial court's decision, stating with approval that the ruling left Dansby free to explore "guarantees of immunity or promises of leniency," as well as "the area of bias." *Dansby*, 893 S.W.2d at 338-39. We think it highly unlikely that the court overlooked whether the trial court's order adequately protected Dansby's confrontation rights when it considered the precise limitations that Dansby challenged as unconstitutional.

The materials cited by the Arkansas Supreme Court reinforce our conclusion. The court framed parts of its discussion in terms of Arkansas Rule of Evidence 608(b). Rule 608(b) provides that a party may not prove specific instances of conduct through extrinsic evidence and may inquire into them on cross-examination only "if probative of truthfulness or untruthfulness." Ark. R. Evid. 608(b). But the court then discussed *Biggers v. State*, 878 S.W.2d 717 (Ark. 1994), which held that a particular application of Rule 608(b) did not violate a defendant's constitutional right to confrontation. *Id.* at 722. By relying on *Biggers*, the court in Dansby's case demonstrated that it was addressing "a question with federal constitutional dimensions." *Johnson*, 568 U.S. at 304-06. Accordingly, AEDPA governs our review of the state court's decision to deny relief.

B.

Under AEDPA's standard of review, the question is whether the Arkansas Supreme Court's decision "was contrary to, or involved an unreasonable application

-8-

of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Dansby asserts that the state court's treatment of his confrontation claim either was contrary to, or an unreasonable application of, three Supreme Court decisions: *Olden v. Kentucky*, 488 U.S. 227 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673 (1986); and *Davis v. Alaska*, 415 U.S. 308 (1974). In each of these cases, the Court held that "the trial court violated a defendant's right to cross-examination by excluding evidence relatively likely 'to show a prototypical form of bias on the part of' a critical witness." *Sittner v. Bowersox*, 969 F.3d 846, 851 (8th Cir. 2020) (quoting *Van Arsdall*, 475 U.S. at 680).

A decision is contrary to federal law if it (1) contradicts a rule set forth in the Supreme Court's cases or (2) confronts a set of "materially indistinguishable" facts and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A decision unreasonably applies federal law if the "state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context." *Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016). "To demonstrate an unreasonable application, a prisoner must show that a state court's adjudication was not only wrong, but also objectively unreasonable, such that fairminded jurists could not disagree about the proper resolution." *Zornes v. Bolin*, 37 F.4th 1411, 1415 (8th Cir. 2022) (internal quotations omitted). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

In *Olden*, *Van Arsdall*, and *Davis*, the Supreme Court recognized that "constitutional rights can trump evidentiary rules and privileges in some circumstances." *Sittner*, 969 F.3d at 851. Yet those decisions also reaffirmed the principle that the right to cross-examine may "bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). In each case, the Court acknowledged that a defendant's opportunity for

cross-examination must be weighed against other concerns, including "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *see also Olden*, 488 U.S. at 232; *Davis*, 415 U.S. at 316.

The state trial court placed three limits on Dansby's cross-examination of McDuffie. Two concerned the use of extrinsic evidence. To rebut McDuffie's testimony with extrinsic evidence, Dansby was required to establish first that McDuffie denied facts on cross-examination that tended to show bias. Extrinsic evidence also could not invite "the jury to perform a feat of speculation or conjecture." None of the cited Supreme Court decisions is contrary to this ruling. *Olden*, *Van Arsdall*, and *Davis* did not even concern the use of extrinsic evidence. Nor do they establish any principle that was applied unreasonably by the Arkansas court in limiting the use of extrinsic evidence. Indeed, the Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes." *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam) (emphasis removed). Thus, the Arkansas Supreme Court did not act contrary to, or unreasonably apply, clearly established federal law when it approved the trial court's limitations on the use of extrinsic evidence.

The other limitation concerned the scope of the cross-examination itself. The trial court instructed Dansby not to question McDuffie about past charges that did not result in convictions. The court clarified, however, that Dansby could inquire into "evidence of guaranties of immunity or promises of leniency or any other considerations."

At trial, Dansby did not make use of the latitude allowed by the trial court's ruling. During cross-examination, McDuffie revealed that he had worked as an informant and reached a signed agreement with law enforcement. Yet Dansby did not develop a line of questioning about any special treatment that McDuffie may have

received in return for his cooperation. On this point, Dansby asked only three questions, and the trial court disallowed just one. The objectionable question concerned *why* McDuffie was held in jail at the time he implicated Dansby, but that question standing alone sought evidence about unadjudicated criminal activity that the trial court had properly ruled inadmissible. Dansby asked no questions concerning McDuffie's treatment by law enforcement in the time between his release from jail and his trial testimony. Within the limits of the trial court's ruling, Dansby was allowed to explore whether McDuffie continued to cooperate with law enforcement, whether he received preferential treatment in exchange, and whether he hoped to receive favorable treatment in return for his testimony. That Dansby did not question McDuffie on these matters is not attributable to the court's ruling.

The trial court recognized, on the one hand, the need to curb speculation and to avoid improper impeachment based on charges that did not result in convictions. On the other, the court considered Dansby's right to elicit probative evidence of favorable treatment of McDuffie by law enforcement or the State. The court balanced these interests by permitting Dansby to inquire into the sources of McDuffie's potential bias so long as he did not ask about past charges that did not result in convictions. If McDuffie failed to testify truthfully, then Dansby could rebut his testimony by presenting relevant extrinsic evidence. The Arkansas Supreme Court did not contravene, or unreasonably apply, the decisions in *Olden*, *Van Arsdall*, and *Davis* by concluding that the balance struck by the trial court was permissible under the Sixth Amendment. Accordingly, Dansby's claim regarding the Confrontation Clause does not justify relief.

### III.

Dansby next alleges that the prosecution withheld material exculpatory evidence, in violation of the rule in *Brady v. Maryland*, 373 U.S. 83 (1963), and knowingly permitted McDuffie to testify falsely, in violation of Dansby's right to due

process. *See Napue v. Illinois*, 360 U.S. 264 (1959). These allegations are closely related. Dansby contends that the State concealed various unwritten inducements that the prosecution had offered to McDuffie in exchange for his testimony. These alleged inducements included a favorable sentencing recommendation in McDuffie's pending felony drug case and non-enforcement of the conditions of his pretrial release. Dansby points to a statement purportedly signed by McDuffie in 2005, recanting his trial testimony and accusing the prosecution of directing him to testify in a manner that he told the authorities was not true.

The district court concluded that Dansby had procedurally defaulted his *Brady–Napue* claim. Alternatively, the court decided that the claim was without merit. We agree that the claim is defaulted, and need not address the merits.

## A.

Dansby argues that we should proceed directly to the merits because the State has waived its right to raise procedural default as a defense. Dansby contends that the State waived the defense by failing to present it adequately in response to Dansby's second amended habeas petition.

Dansby first presented his *Brady–Napue* claim in the second amended petition. The State responded by incorporating any arguments that it made in opposition to Dansby's first claim in his two previous petitions. In its earlier responses, the State had asserted that Dansby's first claim "was grounded solely in state law, and for that reason is defaulted." The first claim in Dansby's original and first amended petitions, however, concerned the Confrontation Clause, not *Brady* or *Napue*. This court concluded that the State's incorporation of a previous argument on procedural default was insufficient to give Dansby notice of its position that the *Brady–Napue* claim, in particular, was procedurally defaulted. *Dansby*, 766 F.3d at 824-25.

-12-

The State now concedes that it forfeited an assertion of procedural default as to the *Brady–Napue* claim but denies that it strategically waived the defense. "A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve." *Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012). A federal court retains discretion to address procedural default if the State inadvertently failed to present the issue. *King v. Kemna*, 266 F.3d 816, 822 (8th Cir. 2001) (en banc). In this case, the State's attempt to raise a procedural-default argument through incorporation by reference, though ineffectual, did not signal its intent to waive the defense. Instead, it showed only that the lawyers made a mistake in fashioning the response. The district court had discretion to address procedural default after giving the parties proper notice. *Dansby*, 766 F.3d at 824; *King*, 266 F.3d at 821-22.

### B.

A petitioner has procedurally defaulted a claim if he did not present the claim in state court and there are no remaining state remedies available. *Skillicorn v. Luebbers*, 475 F.3d 965, 976 (8th Cir. 2007). Dansby did not raise his *Brady–Napue* claim in state court, but he asserts that the claim is not defaulted because he has available to him a state remedy: the writ of error *coram nobis*. This writ permits the Arkansas Supreme Court to reinvest jurisdiction in a state circuit court to consider certain "errors of the most fundamental nature," including the State's withholding of material evidence. *Howard v. State*, 403 S.W.3d 38, 43 (Ark. 2012).

The writ of *coram nobis*, however, is unavailable if Dansby failed to exercise due diligence in petitioning for relief. The Arkansas Supreme Court has "consistently held" that if a petitioner delays in pursuing relief, and lacks a valid excuse for that delay, the court may deny his petition "on that basis alone." *Henington v. State*, 556 S.W.3d 518, 523 (Ark. 2018). "Due diligence requires that (1) the defendant be unaware of the fact at the time of trial; (2) the defendant could not have, in the

exercise of due diligence, presented the fact at trial; and (3) upon discovering the fact, the defendant did not delay bringing the petition." *Id.*

By his own account, Dansby was aware before trial that McDuffie's testimony supposedly was false. He asserts, however, that this awareness had no practical value without evidence to prove its falsity or knowledge of the agreement between McDuffie and the State. That contention rings hollow, because Dansby did not take reasonable steps to develop the evidence before trial. In the document furnished to Dansby's counsel in April 2005, McDuffie stated:

> Nobody representing Ray ever talked to me about the case, either before the trial or at anytime until now. I was really surprised by that, I was waiting on the trial lawyers to come talk to me so I could tell them what I knew but they never contacted me.

McDuffie's expressed willingness to share "what [he] knew" before the trial shows that Dansby, through due diligence, could have uncovered evidence of McDuffie's supposed agreement with the State by interviewing him before the trial. *See Thomas v. State*, 241 S.W.3d 247, 250 (Ark. 2006) (per curiam).

In any event, after McDuffie's purported recantation in April 2005, Dansby had the information that he needed to petition for a writ of error *coram nobis*. Yet he waited six years before bringing the statement to this court's attention. Even now, after another decade has passed, Dansby has not sought *coram nobis* relief. In light of this delay, we conclude that the Arkansas Supreme Court would decline to reinvest jurisdiction in a circuit court to hear Dansby's claim. *See id.* (declining to reinvest jurisdiction when the petitioner waited "more than five years" without good cause before seeking *coram nobis* relief); *see also Gordon v. State*, 588 S.W.3d 342, 347 (Ark. 2019) (affirming the denial of a petition for the same reason).

To avoid this conclusion, Dansby asserts that "pursuit of a claim in federal court satisfies the diligence requirement for *coram nobis* relief." He relies on *Newman v. State*, 354 S.W.3d 61 (Ark. 2009), where the Arkansas Supreme Court made a fact-specific determination that a prisoner and his counsel acted diligently by pursuing a claim in federal court. *Id.* at 67-68. In that unusual case, the prisoner's counsel attempted to initiate state proceedings under Arkansas Rule of Criminal Procedure 37 on the prisoner's behalf. These efforts were thwarted by the prisoner, who was incompetent at the time, so his counsel pursued relief in federal court instead. *Id.* at 68-69. Once federal habeas proceedings were initiated, the prisoner placed his newly discovered evidence front and center. *See id.* at 64; *Newman v. Norris*, 597 F. Supp. 2d 890, 895 (W.D. Ark. 2009). Although Newman did not petition for a writ of *coram nobis* in state court before pursuing his claim through a federal petition for habeas corpus, he diligently presented the newly discovered facts in a judicial forum.

Dansby, by contrast, possessed McDuffie's recantation for years without pressing it in any court. Six months after obtaining the recantation, Dansby filed a motion to expand the record in the district court that did not mention McDuffie's written statement. Several years passed before he finally raised it. Without good cause for his delay, we conclude the Arkansas Supreme Court would not permit a state circuit court to entertain a petition for the writ of error *coram nobis*. Because Dansby has not alleged that any other state remedies are available to him, his claim is procedurally defaulted.

C.

A petitioner who has defaulted his claim may not present that claim through a habeas corpus petition unless he establishes both cause and prejudice. *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004). Dansby cannot show either.

-15-

To show cause, Dansby must demonstrate that his failure to comply with the state procedural rule was attributable to "some objective factor external to the defense." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Because the State's suppression of evidence is both a factor external to the defense and an element of a *Brady* claim, the claim sometimes may provide its own cause to excuse a procedural default. *Hall v. Luebbers*, 296 F.3d 685, 699 (8th Cir. 2002). But that rule obtains only where the State's suppression of evidence is the reason for the petitioner's default. *See Henry v. Ryan*, 720 F.3d 1073, 1082-83 (9th Cir. 2013). A petitioner has not shown cause if he "had evidentiary support for his claim" before his default, *id.*, or if the evidence was "reasonably available through other means." *Zeitvogel v. Delo*, 84 F.3d 276, 279-80 (8th Cir. 1996).

Dansby could have learned about McDuffie's information by interviewing him before trial, and, at the latest, Dansby possessed the facts necessary to seek relief when he obtained McDuffie's recantation in 2005. At that point, Dansby could have filed a petition in state court, or, at the very least, presented the new evidence in his federal habeas corpus proceeding. His failure to do so is attributable to him, rather than some external cause, and is therefore insufficient to excuse the procedural default.

Even if Dansby could show cause, he also would have to establish prejudice by demonstrating that the allegedly suppressed McDuffie evidence is material to his conviction or sentence. *Banks v. Dretke*, 540 U.S. 668, 698-99 (2004). That is, there must be "a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009).

Dansby argues that the evidence was material because it would have allowed him to undermine the credibility of McDuffie's trial testimony. *See Napue*, 360 U.S. at 269. But while Dansby says that McDuffie's testimony was "unique," the record

-16-

at the guilt phase shows otherwise. The most damaging portions of his testimony were cumulative of other evidence. *See Strickler v. Greene*, 527 U.S. 263, 293-96 (1999). Eyewitnesses described how Ray Dansby shot both Brenda Dansby and Ronnie Kimble. Justin Dansby testified repeatedly that neither victim drew a gun before suffering a gunshot wound. Justin heard Dansby fire about five shots at Kimble as he tried to flee. According to Riggins, Dansby killed Brenda as she lay defenseless on the ground. Forensic evidence showed that Brenda and Kimble each suffered multiple gunshot wounds. Before he died, Kimble identified Ray Dansby as his killer. Dansby himself told police that after an argument, he "just pulled [his] gun and started shooting." As we observed in a previous decision, "there was substantial evidence apart from McDuffie's testimony that permitted a jury to infer that Dansby killed the victims in a premeditated and deliberate manner." *Dansby*, 766 F.3d at 817.

As to the sentence, McDuffie's testimony again was not as significant as Dansby suggests. During the penalty phase, the jury concluded that the evidence supported three aggravating circumstances. Two of those are undisputed and unrelated to McDuffie's testimony: that Dansby had (1) committed a prior violent felony, and (2) created a risk of death or injury to someone other than the victims. As to the third aggravating circumstance—that the murders were "committed in an especially cruel or depraved manner"—McDuffie's testimony bore only on the disjunctive alternative of depravity. Cruelty was established by testimony showing that Dansby intended to and did inflict mental anguish upon his victims by leaving them at least briefly uncertain as to their ultimate fate. Ark. Code Ann. § 5-4-604(8); *see Anderson v. State*, 108 S.W.3d 592, 608 (Ark. 2003). The jury also found that Dansby's evidence did not support the existence of any mitigating factor. We see no material connection between McDuffie's testimony and the suggested mitigating factors, which concerned Dansby's personal life and characteristics, criminal history, moral culpability, or subsequent cooperation with police. Where an error is alleged to have impacted only one of multiple aggravating factors, the absence of any

-17-

mitigating factors strongly suggests that any error was harmless.  *See Jones v. State*, 10 S.W.3d 449, 455 (Ark. 2000).

We therefore conclude that Dansby's claim based on *Brady* and *Napue* is procedurally defaulted, and that he has not demonstrated cause and prejudice to overcome the default.  We need not address whether the district court properly deemed McDuffie's recantation incredible without holding an evidentiary hearing, because no hearing is required where the petitioner's allegations, even if true, fail to overcome a procedural default.  *See Amos v. Minnesota*, 849 F.2d 1070, 1072 (8th Cir. 1988); *Moormann v. Ryan*, 628 F.3d 1102, 1114 (9th Cir. 2010).

\*  \*  \*

For these reasons, we affirm the district court's denial of relief on Dansby's conviction, but reverse the grant of relief with respect to the sentence.  The case is remanded with directions to dismiss the second amended petition for writ of habeas corpus.

_____